# SEALED

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS



FILED

JAN - 4 2007

RALPH DeLOACH, Clerk
By _____ Deputy

UNITED STATES OF AMERICA,

                    Plaintiff,

          Vs.                              No.  05-40037-01-SAC

ANTHONY GRIEGO,

                    Defendant.


## MEMORANDUM AND ORDER

          The defendant pleaded guilty to one count of possession of

with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  The

presentence report ("PSR") calculates a guideline range of 135 to 168

months based on a total offense level of 32 (base offense level of 30

pursuant to U.S.S.G. § 2D1.1(c)(5) for possessing 3.99 kilograms of

cocaine and a two-level enhancement for obstruction of justice for

absconding prior to his change of plea of hearing) and a criminal history

category of two (one point for each of the two misdemeanor offenses

committed in September and December of 2005 for which he was

sentenced to 36-month terms of probation).  As reflected in the addendum

to the PSR, the defendant has three objections that are not resolved.

          Before addressing the unresolved objections, the court will take

80

this opportunity to discuss a situation involving this case which had been scheduled for a sentencing hearing on November 30, 2006, and the case of *United States v. Espinoza*, No. 05-40069-02-SAC, which had been scheduled for a sentencing hearing on December 5, 2006.  In preparing for these sentencing hearings, the court reviewed both PSRs and immediately was struck by the unusual factual similarities between the two cases. Concerned that one PSR recommended a sentence almost three times longer (or over seven years longer) than the other, the court called a joint conference in the cases laying out the factual similarities and the differences in the plea agreements and proposed sentences.  The court then asked counsel to confer with regard to these matters, and the sentencing hearings were continued.  The government's counsel in the *Griego* case furnished the court with a position letter.  Because the significant disparity in the calculated guideline sentence ranges is principally due to inexplicable differences in the plea agreements, the court is compelled to discuss its dilemma in more detail here.

Though unrelated cases, the PSRs reveal factual similarities that are remarkable.  Griego and Espinoza are to be sentenced for their first drug trafficking convictions.  Neither defendant has any criminal history

2

or arrests indicative of prior involvement in drug trafficking activity.[1]

Griego's age is 23 while Espinoza is 26.  Each defendant pleaded guilty to possession with the intent to distribute cocaine based on offense conduct that entailed their driving cars in which approximately 3.9 kilograms of cocaine was found hidden in secret compartments.  Passengers were also riding in their vehicles.  Their statements to and cooperation with officers following their arrests was different.[2]

---

[1]The defendant Griego has a conviction in September 2005 for driving with a suspended license and a conviction in December 2005 for using false identification.  He was sentenced on each to probation for 36 months.  He received two criminal history points for these convictions because the terms of probation exceeded one year.

The defendant Espinoza has no criminal convictions but was arrested in 2004 for obstruction and resisting a public officer.

[2]The PSRs disclose some significant differences after their arrests.

The defendant Griego, who is facing the longer guideline sentencing range of 135 to 168 months, eventually told officers that he knew they were transporting cocaine to Kansas City for his stepfather.  The defendant Griego made a controlled telephone call to his stepfather and then disclosed the first name and general address of the person in Kansas City to whom the drugs were being delivered.  The defendant Griego admitted accompanying his stepfather on two prior visits to this same person in Kansas City during which the stepfather engaged in drug-trafficking activity.

The defendant Espinoza, after his arrest, initially denied knowledge of the cocaine but eventually told officers:  "Let's just say it was all mine."  To the question of who loaded the cocaine, Espinoza answered, "Let's say I did."  When asked why he was admitting to full responsibility, the defendant explained:  "Maybe I want to go to prison, maybe I need a change in my life."  Espinoza's calculated guideline sentencing range is 46

The defendants were arraigned, released and supervised in their home state of California.  Both defendants struggled with their pretrial supervision and eventually failed to appear at their scheduled change of plea hearings.[3]  Both defendants were arrested months later in California and transported back to Kansas where they entered pleas to their single-count indictments within a month or two.

In cases so resembling each other, one might expect the calculated guideline sentencing ranges to have some correspondence consistent with the goal of uniformity for which the United States

---

to 57 months.

[3]In the first months of his pretrial supervision, the defendant Griego failed to report and the supervising officer filed a petition for action seeking an arrest warrant.  The warrant was issued on October 14, 2005, for failure to report. (Dk. 45).  On October 18, 2005, Griego's counsel indicated he would be entering a plea, but the defendant failed to appear at his change of plea hearing on October 26, 2005.  A bench warrant was issued for his arrest.  Approximately seven months later, Griego was arrested on May 3, 2006, in California.

After approximately one month of pretrial supervision, the defendant Espinoza stopped reporting.  When his pretrial services officer was able to contact him after over one month of non-compliance, the defendant advised he had signed a plea agreement, he was going to jail, and he would not be reporting.  The officer filed a petition for action seeking a warrant.  The court issued the arrest warrant when the defendant also failed to appear at the change of plea hearing on November 16, 2005.  Approximately seven months later, Espinoza was arrested on June 19, 2006, in California.

4

Sentencing Guidelines are so often praised.   There is, however, no such correspondence in the guideline sentencing ranges calculated here, for the defendant Griego's range is 135 to 168 months and the defendant Espinoza's range is 46 to 57 months.  While the different criminal history categories (one and two) and the safety valve adjustment for Espinoza account for some of the disparity in the sentencing ranges, the larger part of it is due to the differences in the plea agreements.

The plea agreement with defendant Griego provides in pertinent part that the government:  1) would not file any charges for failure to appear, 2) would recommend a sentence at the low-end of the applicable guideline range, 3) would not oppose the safety valve adjustment if the probation office determined the defendant was eligible, and 4) would "take no position regarding" the obstruction of justice enhancement.  Based on the undisputed facts and these terms of the plea agreement, the PSR for Griego calculates a total offense level of 32 (base offense level of 30 plus two levels for obstruction of justice) and a criminal history category of two for a guideline sentencing range of 135 to 168 months.

The plea agreement with the defendant Espinoza provides in

pertinent part that the government: 1) would recommend a sentence at the low-end of the applicable guideline range, 2) would recommend a two-level reduction for acceptance of responsibility and move for an additional one-level reduction for timely notifying the government of his intention to plea, 3) would not oppose the safety valve adjustment; 4) would not oppose two-level minor role reduction, 5) would not advocate an obstruction of justice enhancement, and 6) would recommend 46 months imprisonment as an appropriate sentence in the case.  Based on the terms of the plea agreement, the PSR for Espinoza calculates a total offense level of 23 (base offense level of 30, less two levels for safety valve, less two levels for minor role, less three levels for acceptance of responsibility) and a criminal history category of one for a guideline range of 46 to 57 months.[4]

Following the joint chambers conference mentioned above, the government's counsel in *Griego* wrote the court saying the parties in both cases desired "a just and roughly equitable result" in the sentencing determinations.  To reach this "desired result of rough equality," it was

---

[4]If Espinoza had been denied a reduction for acceptance of responsibility and assessed with an obstruction of justice enhancement, then his guideline range would have been 78 to 97 months (total offense level of 28 and criminal history category of one).

suggested that the court consider adjusting Griego's sentence downward
and that the court accomplish this not by tampering with the "Guideline rule
of thumb" that a defendant who fails to appear will lose the acceptance of
responsibility adjustment and will face an obstruction of justice
enhancement but by considering the individual circumstances of Griego's
case.  Prominently suggested in counsel's letter as one such circumstance
for a downward departure was "taking into account the need in these two
cases for an equalization."

       The court appreciates its well-defined and limited discretion for
departures under guidelines and its broader and less-defined discretion
under § 3553(a) after *Booker*.[5]  Nor is the court reluctant to exercise its

_____

       [5]Appellate courts have begun reining in even this latter exercise of
discretion.  "We reject the concept that we, as judges, should determine
'reasonableness' under § 3553(a) without reference to the fact that the
Guidelines represent a critical advisory aspect of the § 3553(a) factors.
'The continuing importance of the Guidelines in fashioning reasonable
sentences . . . simply reflect that the Guidelines are generally an accurate
application of the factors listed in § 3553(a).'  *Booker* does not place
original sentencing decisions entirely in the discretion of trial judges; the
Guidelines–as an expression of the political will of Congress–continue to
assert advisory influence on those decisions."  *United States v. Cage*, 451
F.3d 585, 594 (10th Cir. 2006) (quoting *United States v. Terrell*, 445 F.3d
1261, 1265 (10th Cir. 2006)).  The more a court diverges from a
recommended guideline sentencing the more "dramatic" or "compelling"
the facts must be to sustain the application of § 3553(a) factors as
reasonable.  *Cage*, 451 F.3d at 594.

discretion consistent with governing precedent when the facts so warrant a

departure or variance.  As it has done in the past, the court could simply

welcome the parties' suggestions offered in response to the court's

prompting, adjust the sentence accordingly, and remain encouraged by

parties' mutual desire for a "fair" sentence.  Despite the temptation to

march in step with the past, the court believes the convergence of several

factors demands more this time.[6]

---

[6]From the outset, the court acknowledges its very limited authority to interfere with the charging and plea bargaining decisions of the prosecution:

> "[T]he Sentencing Commission specifically contemplated the impact of plea bargaining and charging practices of federal prosecutors in drafting the Guidelines and declined to implement any major changes in the process despite the arguments of some commentators that the Sentencing Guidelines 'failed to control and limit plea agreements [and thus] leave untouched a "loophole" large enough to undo the good that sentencing guidelines would bring.' U.S.S.G. Ch. 1, pt. A, subpt. 4(c). . . .

> . . . . Because . . . [the defendant] has not argued bad faith or discrimination on the part of the prosecutor at any time during the criminal proceedings, . . ., the Sentencing Guidelines prohibit the district court from interfering with the prosecutor's discretionary charging and plea bargaining decisions via the avenue of departure.

*United States v. Armenta-Castor*, 227 F.3d 1255, 1259-60 (10th Cir. 2000) (citations, internal quotations, and footnote omitted).  Even though *Armenta-Castro* was decided while the guidelines were treated as mandatory,  much of its reasoning "remains relevant and applicable." *United States v. Salazar-Alpizar*, 182 Fed. Appx. 757, 762 (10th Cir. 2006).

The court is hard-pressed to remember any two cases where the factual similarities were so striking, the plea agreements were so different, and the proposed guideline sentences were so disparate. What the court knows of the reasons behind the differences is no more than "[b]oth negotiations were justified." Despite this disadvantaged position, the court retains the responsibility to address a sentencing disparity.[7] Moreover, the parties apparently agree that judicial intervention is necessary to cure this disparity and offer up some possible rationales for adjusting Griego's sentence downward. The facts proffered in support of these rationales are not compelling, particularly when judged against precedent and practice.[8] Still, the parties want the court to shape and

---

[7]The court understands that generally a sentencing disparity created by a plea agreement is justified. *United States v. Nichols*, 376 F.3d 440, 443 (7th Cir. 2004); *see e.g. United States v. Driskill*, 194 F.3d 1321, at *3, 1999 WL 730954 (10th Cir. Sept. 20, 1999). Such a disparity is not only explicable but contemplated by the guidelines. *Id*. The Tenth Circuit recently extended this reasoning in a post-*Booker* ruling by holding that the sentencing disparities created by fast-track programs available only in those districts adopted by the United States Attorney General and the United States Attorney for the district are not "unwarranted" disparities under § 3553(a)(6), as Congress specifically had authorized the disparities in the PROTECT Act. *United States v. Martinez-Trujillo*, 468 F.3d 1266, 1268 (10th Cir. 2006).

[8]"While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v.*

massage certain factors and assign value to them under the current

sentencing scheme in order to cure a problem the parties created

themselves.[9]

All appreciate the current sentencing process remains largely

_____

*Goddard*, 929 F.2d 546, 550 (10th Cir. 1991) (internal citation and citation omitted).  In determining a sentence, a court "shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The purpose of the guidelines was "'to eliminate unwarranted disparities in sentencing nationwide, not to eliminate disparity between co-defendants.'"  *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) (quoting *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir. 1997)).  Thus, a defendant whose sentence has been properly calculated under the sentencing guidelines is not entitled to relief on a claim of sentencing disparity.  *United States v. Davis*, 437 F.3d at 997.

[9]As stated earlier, the court here is not questioning the legality or value of plea agreements in which the government promises to make recommendations or to refrain from making other arguments.  *See* U.S.S.G. § 6B1.2, p.s.  Indeed, the guidelines contemplate that a sentencing court may accept non-binding recommendations "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons."  U.S.S.G. § 6B1.2, p.s. comment.  What the court hopes the parties understand is the dilemma placed on it when plea agreements hinge on government recommendations that countenance applications of the guidelines otherwise discouraged by precedent or practice or that involve less than full disclosure of facts relevant to guideline determinations.  Should the court's more deferential approach towards plea agreements be replaced with a more discerning approach, the value and utility of plea agreements based on non-binding recommendations could be at risk.

10

influenced by the sentencing guidelines.[10]  The predictability and certainty

touted by the government as virtues of the sentencing guidelines[11] are

compromised when a plea agreement asks a court to impose a guideline

sentence calculated in a manner inconsistent with guideline practice or

precedent.  For that matter, what good comes from plea agreements that

call for guideline sentences calculated so as to result in widely divergent

sentences in cases barely indistinguishable on the facts relevant under the

---

[10]The Guidelines "continue to be the 'starting point' for district courts
and for this court's reasonableness review on appeal."  *United States v.
Terrell*, 445 F.3d 1261, 1264 (10th Cir. 2006).  The Tenth Circuit has
observed:

> "[A]lthough the Guidelines are listed as only one of the § 3553(a)
> factors, they are not just one factor among many.  Instead, the
> Guidelines are an expression of popular political will about
> sentencing that is entitled to due consideration when we determine
> reasonableness.  'The Guidelines "represent at this point eighteen
> years' worth of careful consideration of the proper sentence for
> federal offenses."'  *Terrell*, 445 F.3d at 1265 (quoting *United States v.
> Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005).  Because *Booker*
> represents a balance between the competing values of the Sixth
> Amendment, an appellate court reviewing a sentencing decision must
> take into account not only the individual factors that determine
> reasonableness listed in § 3553(a), but also should give particular
> advisory weight to the judgments made by the political process
> represented in the Guidelines."

*United States v. Cage*, 451 F.3d 585, 593 (10th Cir. 2006).

[11]The courts join in this chorus.  "The purpose of the Sentencing
Commission is to provide 'certainty and fairness' in sentencing and to avoid
'unwarranted sentencing disparities.'"  *United States v. Cornelio-Pena*, 435
F.3d 1279, 1285 (10th Cir. 2006) (citing 28 U.S.C. § 991(b)(1)(B)).

guidelines.  The answer is obvious, and the harm is no less plain.  To reiterate, the court is not averse to exercising its discretion in sentencing so as to achieve the parties' expectations in plea agreements.  The court firmly expects, however, that the parties will fashion their agreements so the court's sentencing discretion can be exercised consistent with precedent and guideline practice and that the parties will furnish the court with the appropriate information required for its reasonable exercise of such discretion.

**Defendant's First and Second Objections**:  The defendant argues that despite his failure to appear at his first change of plea hearing, he should not receive a two-level enhancement for obstruction of justice and still should receive a two-level reduction for acceptance of responsibility. He insists some credit in sentencing should be conferred to his admissions, his guilty plea, and his cooperation immediately following his arrest.  As mitigating reasons for his failure to appear, the defendant asks the court to consider his age, his inexperience with criminal proceedings, and his decision to remain at home with his wife who had suffered a recent miscarriage and related health complications.  Consistent with the plea agreement, the government has said it takes no position regarding the

12

obstruction of justice enhancement.  The government did not respond to the objection on the acceptance of responsibility reduction.

Ruling:  While it may be true that the defendant's failure to appear was nothing more than remaining at home in California with his wife and family and working his regular job, it is undisputed that during this same period the defendant did not report to his pretrial supervision or make any efforts to communicate with the court until compelled by his arrest on a federal warrant approximately seven months later.  In the court's judgment, the defendant's conduct submits to no other appropriate characterization than a willful failure to appear for a judicial proceeding.  *See* U.S.S.G. § 3C1.2 comment. (n. 4(e)).  Such obstructive conduct is an example of the types of conduct to which an obstruction of justice enhancement "is intended to apply."  U.S.S.G. § 3C1.2 comment. (n. 3).  "Obstructive conduct can vary widely in nature, degree of planning and seriousness." *Id*.  Nonetheless, the court does recognize that the mechanical imposition of a two-point enhancement here fails to take into account the defendant's mitigating reasons.

The defendant "bears the burden of establishing entitlement to a reduction under § 3E1.1." *United States v. Bindley*, 157 F.3d 1235, 1241

13

(10th Cir. 1998), *cert. denied*, 525 U.S. 1167 (1999).  The defendant must clearly demonstrate "recognition and affirmative acceptance of personal responsibility for his criminal conduct."  *Id.* (quotation marks and citation omitted).  "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility."  U.S.S.G. § 3E1.1, comment. (n. 5).  While the entry of a guilty plea does not entitle a defendant to this adjustment "as a matter of right," a guilty plea and a truthful admission of conduct comprising the offense of conviction is "significant evidence of acceptance of responsibility."  U.S.S.G. § 3E1.1, comment. (n. 3).  Such evidence, however, "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 3).

Conduct which results in an enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."  *Id.* § 3E1.1, cmt. n. 4.  Only under "extraordinary" circumstances may the district court apply both an obstruction of justice enhancement and an acceptance of responsibility adjustment.  *Id.*  The Tenth Circuit recently addressed at length the appropriate extraordinary circumstances inquiry to make when a defendant

14

pleads after having engaged in obstructive conduct.  *United States v.*

*Salazar-Samaniega*, 361 F.3d 1271, 1278-82 (10th Cir.), *cert. denied*, 125

S. Ct. 180 (2004).  The panel agreed with the analysis found in the Eighth

Circuit's decision of *United States v. Honken,* 184 F.3d 961, 972 (8th Cir.),

*cert. denied*, 528 U.S. 1056 (1999), that a sentencing court should

consider the:

> totality of the circumstances, including the nature of the [defendant's]
> obstructive conduct and the degree of [his] acceptance of
> responsibility. Among other things, the district court should [consider]
> whether, for example, the obstruction of justice was an isolated
> incident early in the investigation or an on-going effort to obstruct the
> prosecution. It should [consider] whether [defendant] voluntarily
> terminated his obstructive conduct, or whether the conduct was
> stopped involuntarily by law enforcement.

*United States v. Salazar-Samaniega*, 361 F.3d at 1279 (quoting *Honken*,

184 F.3d at 968-69).  "'[A] defendant must show more than a guilty plea

and a cessation of obstructive conduct to establish an "extraordinary case"

for purposes of § 3E1.1, application note 4.'"  *United States v. Nguyen*, 339

F.3d 688, 691 (8th Cir. 2003) (quoting *Honken*, 184 F.3d at 970).

As revealed from its position on the obstruction of justice

enhancement taken in the plea agreement and subsequently explained in

its letter, the government attaches some significance to the mitigating

circumstances offered for the defendant's obstructive conduct.  The

15

defendant did not flee to another state or location in absconding but remained with his family rather than appearing for court.  His poor choice appears to reflect more a concern for his wife's immediate health issues than an inability to accept responsibility for his criminal actions.  There is no question that the defendant has accepted full responsibility for his role in the offense.  Though the court ordinarily would not find these circumstances to be extraordinary, it will do so here in light of the government's position on the obstruction enhancement.  The court finds that the defendant is entitled to a two-level reduction for acceptance of responsibility.  In its evaluation of the § 3553(a) factors, the court will consider that the guidelines do not account for the government's position on the obstruction of justice enhancement and the defendant's offered mitigating reasons.

**Defendant's Third Objection**:  The defendant asks for a minor role reduction arguing that at most, he was a mere courier with no prior criminal history at the time.  He played no other role in the drug transaction related to the financing, selling, profiting, procuring, arranging, negotiating or securing of it.  His knowledge was limited to his step father's directions and the first name and general location of the intended recipient of the drugs.

16

The government did not provide any response to this objection.

Ruling:  This court will incorporate by reference its discussion of

Tenth Circuit precedent on a minor role reduction for drug couriers.  *See*

*United States v. Vargas-Islas*, 437 F. Supp. 2d 1180 (D. Kan. 2006);

*United States v. Rubio-Sanchez*, 2006 WL 2402986 (D. Kan. July 25,

2006).  The court also notes that the co-defendant Miguel Aldrete received

a minor-role reduction in this case following a chambers conference with

counsel.

The court finds that the defendant has carried his burden of

proving he is substantially less culpable than others involved in the same

enterprise.  Even if generally important to a drug distribution scheme,

couriers may be less culpable than others involved in a particular

distribution scheme.  The defendant here does not appear to have been

involved in the planning, arranging, negotiating, purchasing, financing,

packaging, handling, hiding, or selling of the drugs.  He appears to have

had no investment in the scheme nor arrangement to profit from the

ultimate distribution.  While his personal relationship with Moreno suggests

the possibility the defendant knows more about the distribution conspiracy

than revealed, the court will not let this speculative possibility be the

17

reason for denying a role reduction here.  The court finds that the defendant is substantially less culpable than Moreno and others involved in this distribution conspiracy who were knowledgeable of and responsible for so many of the functions vital to the conspiracy's success.  The court grants a two-level minor role reduction.

**Sentencing Considerations.**  In light of the rulings above, the defendant's guideline sentencing range is now 87 to 108 months (total offense level of 28 and criminal history category two).  The court agrees with the defendant that his recent misdemeanor convictions for driving with a suspended license and giving a false name to an officer are minor in nature.  If the defendant had received a more typical state sentence of less than one year of probation on either offense, then he would have had a criminal history category of one and probably would have qualified for the safety valve.  The court believes the calculated criminal history over-represents the seriousness of his past and results in a sentence nearly two years longer under the guidelines.  At this time, the court sees a sentence of 72 months imprisonment as meeting the sentencing factors and needs outlined in 18 U.S.C. §  3553(a).

IT IS THEREFORE ORDERED that the defendant's objections

18

to the PSR are granted in part and denied in part;

IT IS FURTHER ORDERED that due to its content the clerk of the court shall file this order under seal in this case and in the case of *United States v. Espinoza*, No. 05-40069-02-SAC.

Dated this 4th day of January, 2007, Topeka, Kansas.

_____
Sam A. Crow, U.S. District Senior Judge

19